# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| KENNETH A. DIXON and | : | Bankruptcy No. 08-10510DWS |
| VALERIE D. DIXON, | : | |
| | : | |
| Debtors. | : | |

## MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court are the (1) Motion to Convert Chapter 13 case to Chapter 7 Case, or in the Alternative, to Dismiss or to Appoint Trustee ("Creditor Motion") filed by Rachel Dorsey ("Dorsey"), a judgment creditor and (2) Motion to Dismiss Pursuant to Section 1307(c) ("UST Motion") filed by the Acting United States Trustee ("UST" and together with Dorsey, "Movants").

**BACKGROUND**

On January 21, 2008, Kenneth A. Dixon ("Kenneth") and Valerie D. Dixon ("Valerie" and together with Kenneth, "Debtors") filed this Chapter 13 case.[1] At the first

---

[1] This is the Debtors' third bankruptcy case and in accordance with his practice when serial filings are apparent, the Chapter 13 trustee sought and obtained a consent order which in the event of dismissal of this case prohibits Debtors from refiling without leave of Court. Doc. No. 114. While neither of the Movants have sought dismissal with prejudice, that agreement constrains Debtors' future options in the event of dismissal.

anniversary of their most recent case, Debtors have still not filed complete and accurate schedules with the Court. Their original statements were materially false as was discovered by the UST during a Rule 2004 examination conducted on October 8, 2008. On Schedule A and the amendments thereto, Debtors claim that certain real property located at 820 South 56th Street, Philadelphia, PA (the "56th Street Property") is owned by Kenneth and his mother. Exhibit T- 5. This alleged ownership information was repeated in a series of hearings in furtherance of thirteen separate motions to avoid judgment liens, and was relied upon by the Court in rendering the lien avoidance decisions.[2] In fact legal title to the 56th Street Property is vested solely in Kenneth by a deed that has not been superceded. Exhibit T-15 (deed). Debtor claims he was not aware of this fact although the deed could not be clearer on its face. I find Kenneth's explanation not only lacking in credibility but even if not a patent misrepresentation, it evidences a gross failure to discharge his duty to accurately discover and state the extent of his assets.

Debtors affixed a $38,000 value to the 56th Street Property in the original and amended Schedule A filed on July 24, 2008. Exhibits T-2 and T-5. Yet at his Rule 2004

---

[2] The object of these motions was a number of former customers of Kenneth's contracting business who had secured judgments against him for failure to perform home renovation contracts. It appears that lien avoidance was a primary purpose of this Chapter 13 case. Many of those consumers objected to the motions and appeared (with and without counsel) to defend the motions. It took two hearings and an order that the Schedules be amended to accurately state the status of the claims (counsel had inexplicably scheduled every claim as disputed notwithstanding the existence of prepetition final judgments) before the Debtors were able to make a record that I believed enabled me to determine whether lien avoidance was warranted. However, based on the misrepresentation of co-ownership with the mother, my determination assumed that Kenneth's estate was allocated only 50% of the value of the 56th Street Property and reached erroneous conclusions. Accordingly, these my orders must and will be vacated, and Debtors' Chapter 13 plan, which treats the claims as unsecured, is presumably unconfirmable.

examination he stated that he could sell it for between $80,000 and $115,000 if improved. He estimated the costs of the repairs to be $20,000-$30,000, indicating that the scheduled value purportedly taken from Board of Tax Revisions records was understated.[3] The Debtors insured the 56th Street Property for $55,000, further indicating a higher value than that reflected on Schedule B. Exhibit T-17.

The Schedules failed to disclose two motor vehicles, an omission Kenneth charges his attorney with making. It was not until the §341 hearing when he was questioned by the trustee, that Kenneth presented the insurance declaration for the vehicles. Notably he did not state that he had given it to his attorney earlier. An Amended Schedule B was filed on July 24, 2008 to correct this problem. Exhibit T-6. The original Schedule B also fails to accurately disclose the Debtors' bank accounts, and the existence and amounts have still not been pinned down. The PNC balance is reported at $25.00 as of the filing date of January 21, 2008. Id. However, the PNC bank statement shows a ledger balance of $247.35 on January 18 and $747.35 on January 22, putting into question the accuracy of the scheduled disclosures.[4] Exhibit T-16. Kenneth could not state the balance of another bank account at Wachovia and acknowledged that he had not scheduled the PNC brokerage account. Asked about Valerie's solely-owned real property in which the couple resides at 605 Christiana

---

[3] Kenneth is a contractor and acknowledges that he can perform these repairs himself, putting into question the accuracy of his cost estimate which is based on third party performance.

[4] Debtors were asked to provide all their bank statements and cancelled checks. The PNC bank statements do not appear to be fully produced. The Wachovia checks were not produced because Debtors did not want to pay the copy charges. The list of creditors paid in the last twelve months was not complete, only covering the last eight months.

Street, he verified that it was scheduled at $80,000 and is encumbered by a $47,000 mortgage. Exhibit T-5. While he did not know the purchase price, he acknowledged that the dwelling was insured for $157,000, indicating a value for insurance purposes in excess of the scheduled value. Exhibit T-18.

Debtors' compliance with their obligation to file tax returns was also questioned. While Kenneth testified at the §341 meeting that City of Philadelphia and Pennsylvania tax returns had been filed, he later acknowledged that statement was not correct. Rather he just filed the 2001 to 2007 returns in November 2008. They have not been produced but he did not believe they were requested as part of the Rule 2004 production.

Based on the foregoing record, the UST avers that "the ongoing pattern of Debtors' failure to file accurate schedules and failure to testify accurately when [Debtors] knew or should have known the truth constitutes a lack of good faith and cause for dismissal of this case" under §1307(c). Motion ¶ [11]. The UST argues that while the inaccurate and incomplete disclosures do not appear to be an intentional fraud, they nonetheless evidence a practice of playing "fast and loose" with the Court which should not be countenanced. Finding Kenneth's efforts to justify what appear to be misrepresentations on his schedules incredible, Dorsey also presses for dismissal.[5] For the reasons that follow, I will grant Movants' request.

---

[5] She joins the UST's request for relief and abandoned her alternative request for conversion.

**DISCUSSION**

Section 1307(c) provides a bankruptcy court with the power to dismiss a bankruptcy case for "cause." 11 U.S.C. § 1307(c). A bankruptcy court has considerable discretion in determining whether "cause" exists and whether dismissal is the appropriate remedy. E.g., In re Orawsky, 387 B.R. 128, 137 and n. 15 (Bankr. E.D. Pa. 2008) (*citing* cases); 8 Collier on Bankruptcy, ¶ 1307.04[4] (15th ed., rev.) ("As under the other subsections of section 1307(c) [i.e., sections other than § 1307(c)(4) ], the court's power to dismiss or convert is discretionary."). See also In re Henry, 368 B.R. 696, 699 (N.D. Ill. 2007) (same).

Section 1307(c) provides a non-exclusive list of grounds constituting cause, including "unreasonable delay that is prejudicial to creditors". 11 U.S.C. §1307(c)  Although the statute makes no express mention of "bad faith," it is well established that lack of good faith may also be cause for dismissal under §1307(c). In re Lilley, 91 F.3d 491 (3rd Cir. 1996). Both these grounds are implicated when a debtor provides false information to the court

The privilege of bankruptcy relief is accompanied by specific statutory duties, the most basic of which is full and accurate disclosure of required information about the debtor's financial condition. This disclosure takes the form of schedules of assets and liabilities, income and expenditures and a statement of financial affairs as required by §521. This obligation is strict and requires that the schedules be as complete and accurate as possible. In re McNichols, 254 B.R. 422, 432 (Bankr. N.D. Ill. 2000).  Absent this information, creditors cannot evaluate the debtor's prospects for reorganization, including the confirmability of the proposed Chapter 13 plan. Additionally, as evident in this case where

-5-

the Court entered multiple lien avoidance orders in reliance on erroneous ownership information, the failure to properly disclose assets can directly prejudice creditors. Accordingly, the failure to discharge the duty of disclosure has provided grounds for dismissal of the Chapter 13 case. Id. at 435 (lack of good faith).  See also In re Lesche, 234 B.R. 208 (Bankr. D. Mass 1999) (same); In re Nassar, 216 B.R. 606 (Bankr. S.D. Tex. 1998)(lack of good faith and delay prejudicial to creditors).

I agree with the UST that Debtors have played fast and loose with the Court.  Based on Kenneth's testimony, which I found self-serving and unpersuasive, I conclude that the Debtors have at best adopted a cavalier attitude toward the filing of their schedules, leaving to the Court and creditors the unacceptable burden of ferreting out the true facts.  In re Beck, 309 B.R. 340, 350 (Bankr. N.D. Cal. 2004). The original Schedules were replete with material inaccuracies, failing to disclose vehicles owned and bank accounts held and misstating the ownership of the 56th Street Property.  Indeed even with the filing of amended schedules and Kenneth's submission to a Rule 2004 examination, Debtors have still not provided accurate and complete information. The values of the real estate assets listed have been impeached by contradicting evidence of values affixed by Debtors for insuring these same assets.  Kenneth's testimony failed to put these disparities to rest.  Bank documents requested have not been produced allegedly because the Debtors did not wish to incur the cost, suggesting that they still do not comprehend their responsibilities in this case which has been pending for one year without the confirmation of a Chapter 13 plan.  Parties in interest have still been unable to verify the assets held and their value. So long as there is doubt

about the accuracy of Debtors' disclosures, plan confirmation, which has been continued five times, shall elude and creditors shall be unreasonably delayed.

Based on the totality of the circumstances as described above, this Chapter 13 case shall be dismissed. No party has requested that there be a bar against refiling, and I will not *sua sponte* grant one. However, as noted above, the Debtors have entered into a consent order with the Chapter 13 trustee agreeing not to file a further bankruptcy case should this one be dismissed. See note 1 supra. Accordingly, should Debtors want further bankruptcy relief, they will have to seek court approval. Any motion to that end shall be accompanied by all the documents required by §521, which shall be complete and accurate and capable of being supported, upon request of a party in interest, by corroborating objective evidence.

An Order shall be entered consistent with this Memorandum Opinion.

*[signature: Diane W. Sigmund]*

---
DIANE WEISS SIGMUND
U.S. Bankruptcy Judge